<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

MBR CONSTRUCTION SERVICES, INC., )
                                 )   Civil Action
             Plaintiff           )   No. 11-cv-07218
                                 )
       vs.                       )
                                 )
                                 )
CITY OF READING;                 )
HIRNEISEN ELECTRIC, INC.,        )
INDEPENDENCE LIGHTING, INC.,     )
                                 )
             Defendants          )

                    *   *   *

APPEARANCES:

        SHAWN R. FARRELL, ESQUIRE
        CHRISTOPHER P. SOPER, ESQUIRE
            On behalf of plaintiff

        JOHN J. MIRAVICH
            On behalf of defendant City of Reading

                    *   *   *

                 <u>O P I N I O N</u>

JAMES KNOLL GARDNER
United States District Judge

        The matter before the court is Defendant City of

Reading's Motion to Dismiss the Complaint, which motion was filed

December 19, 2011.[1]  On January 16, 2012 plaintiff filed its

Response to Motion to Dismiss.[2]

---

        [1]    The motion was accompanied by Defendant City of Reading's Brief in
Support of Its Motion to Dismiss the Complaint ("The City's Brief") and
Exhibits "A" through "G".

        [2]    Plaintiff's response to the motion to dismiss was accompanied by
Plaintiffs' Memorandum in Support of Their Response to Defendant's Motion to

                                        (<u>Footnote 2 continued</u>):

For the following reasons, the City's motion to dismiss is granted in part and denied in part.

Specifically, the City's motion to dismiss is granted to the extent it seeks dismissal of Counts I, II, IV, and V. Counts I and IV are dismissed with prejudice. Counts II and V are dismissed without prejudice to file an amended complaint concerning those counts.

The City's motion to dismiss is denied to the extent that it seeks dismissal of Count III.

<u>JURISDICTION</u>

Jurisdiction in this case is contested. However, plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1331, which provides district courts with original jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391 because the parties reside within this judicial district and because a substantial part of the events giving rise to plaintiff's claims allegedly occurred within this judicial district.

---

(<u>Continuation of footnote 2</u>):

Dismiss.  By Order dated January 25, 2012 and filed January 26, 2012 I approved a Stipulation to Amend Memorandum, which permitted plaintiff to file an amended memorandum in opposition to defendant's motion to dismiss.

The only difference between plaintiff's initial memorandum and its amended memorandum appears to be that the amended memorandum includes an extra footnote, inserted as footnote 3 in the amended memorandum.

PROCEDURAL HISTORY

On November 18, 2011 plaintiff MBR Construction Services Inc. filed a five-count Verified Complaint against defendants City of Reading; Hirneisen Electronic, Inc.; and Independence Lighting, Inc.[3]

Also on November 18, 2011 plaintiff filed its Motion for Preliminary Injunction and Temporary Restraining Order of Plaintiff, MBR Construction Services, Inc.

A two-day hearing was scheduled for January 9 and 10, 2012 on plaintiff's motion for a preliminary injunction and temporary restraining order.  However, on December 29, 2011 plaintiff filed a notice to withdraw its motion.[4]  By Order dated and filed December 29, 2011 I approved the notice to withdraw and cancelled the January 9 and 10, 2012 hearing.

On December 19, 2011 defendant City of Reading filed the within motion to dismiss plaintiff's complaint.  Also on December 19, 2011 defendant Hirneisen Electric, Inc. filed an

---

[3]     Count I of the Verified Complaint asserts a claim for injunctive relief against all defendants.  Count II asserts a claim a claim for breach of the Sherman Act against all defendants.  15 U.S.C. § 1.

Count III asserts a Pennsylvania state-law fraud claim against defendant City of Reading only.  Count IV asserts a claim for violations of plaintiff's procedural due process rights under the United States Constitution against defendant City of Reading only.

Count V asserts a Pennsylvania state-law claim for civil conspiracy against all defendants.

[4]     Plaintiff's notice was titled Notice to Withdraw Motion for Preliminary Injunction and Temporary Restraining Order of Plaintiff, MBR Construction Services, Inc.

answer to plaintiff's complaint.[5]  On December 21, 2011 defendant
Independence Lighting, Inc. filed its answer.[6]

<u>STANDARD OF REVIEW</u>

Defendant City of Reading ("the City") seeks dismissal
of plaintiff's complaint pursuant to Federal Rule of Civil
Procedure 12(b)(1) for lack of subject matter jurisdiction and
pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure
to state a claim upon which relief can be granted.

<u>Rule 12(b)(1)</u>

The City contends that this court lacks subject matter
jurisdiction because plaintiff's two federal claims fail to state
a claim upon which relief may be granted pursuant to Federal Rule
of Civil Procedure 12(b)(6).  Accordingly, the City's motion
pursuant to Rule 12(b)(1) is premised upon dismissal of
plaintiff's two federal claims pursuant to Rule 12(b)(6).

However, the "failure to state a claim upon which
relief can be granted does not mean that federal question
jurisdiction is lacking."  <u>The Pitt News v. Fisher</u>, 215 F.3d 354,
360 (3d Cir. 2000).

Rather, pursuant to 28 U.S.C. § 1367(a), a district
court "shall have supplemental jurisdiction over all other claims

---

[5]     The answer is titled Answer with Affirmative Defenses on Behalf of
Defendant Hirneisen Electric, Inc.

[6]     The answer is titled Independence Lighting, Inc.'s Response to
Complaint.

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Further, 28 U.S.C. § 1367(c) provides that the "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...the district court has dismissed all claims over which it has original jurisdiction" (emphasis added).  Accordingly, this court's power to decline to exercise supplemental jurisdiction is discretionary, not mandatory.

Here, the City does not contend that plaintiff's state-law claims are unrelated to its federal claims.  Nor does the City contend that the court lacks subject matter jurisdiction to decide plaintiff's claim brought pursuant to 42 U.S.C. § 1983.[7]

Therefore, plaintiff has asserted claims "arising under" the Constitution and federal law.  Accordingly, Rule 12(b)(1) does not provide a basis for the relief sought by the City, and I need not elaborate further on the standard of review

---

[7]     Furthermore, the City's contention that plaintiff lacks standing to bring an antitrust claim does not implicate the subject matter jurisdiction of this court.  Although challenges to a plaintiff's standing, under Article III of the United States Constitution, concern subject matter jurisdiction and therefore are properly analyzed under Rule 12(b)(1), antitrust standing is different from constitutional standing.  A plaintiff's "failure to establish antitrust standing results in dismissal under Rule 12(b)(6)".  Seltzer v. Intuit, Inc. 564 F.Supp.2d 385, 396 and 419, n.22 (E.D.Pa. 2008) (O'Neill, J.).

        Here, the City does not appear to contend that plaintiff fails to establish standing requirements under Article III of the Constitution. Rather, the City contends that plaintiff does not have antitrust standing. (See The City's Brief, pages 8-9).

for a motion to dismiss under Rule 12(b)(1).  Because Rule
12(b)(1) does not provide a basis for the relief requested by the
City, I deny the City's motion to the extent that it seeks
dismissal of plaintiff's complaint for lack of subject matter
jurisdiction.[8]

Although Rule 12(b)(1) does not provide a basis for
dismissal of plaintiff's complaint, the City also contends that
each Count in plaintiff's complaint fails to state a claim upon
which relief can be granted and therefore dismissal is warranted
pursuant to Rule 12(b)(6).

<u>Rule 12(b)(6)</u>

A claim may be dismissed under Federal Rule of Civil
Procedure 12(b)(6) for "failure to state a claim upon which
relief can be granted."  A Rule 12(b)(6) motion requires the
court to examine the sufficiency of the complaint.  <u>Conley v.
Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84
(1957) (<u>abrogated in other respects by</u> <u>Bell Atlantic Corporation
v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929
(2007)).

---

[8]     Instead, I will treat the City's motion to dismiss for lack of
subject matter jurisdiction as a request that I decline to exercise
supplemental jurisdiction over plaintiff's state-law claims, in the event the
City's motion to dismiss plaintiff's federal-law claims for failure to state a
claim is granted.  <u>See</u> 28 U.S.C. § 1367(c).

Additionally, I will consider the City's arguments concerning
plaintiff's lack of antitrust standing in conjunction with its arguments for
dismissal of that claim in Count II of the Complaint pursuant to Rule
12(b)(6).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[9]

In determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief."  <u>Fowler</u>, 578 F.3d

---

[9]    The opinion of the United States Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the  "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and that the plaintiff is entitled to relief.  <u>Fowler</u>, 578 F.3d at 210 (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

As the Supreme Court explained in <u>Iqbal</u>, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully."  <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, 556 U.S. at 680, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

<u>FACTS</u>

Based upon the averments in plaintiff's Verified Complaint, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

On April 19, 2011 defendant City of Reading opened bidding for a public contract for the LED Street Lighting Retrofit ("Project").  The City's solicitation of bids required that all the contractors exclusively use "Leotek Green Cobra GCA1 Series" lighting fixture ("Leotek Fixture") as a component of the

Project.  Defendant Independence Lighting, Inc. is the only distributor in the area that provides Leotek Fixture.[10]

Plaintiff asked the City if an alternate or equal product could be used.  The City responded by issuing Addendum No. 1 to its bid solicitation, which stated that "NO IT MUST BE THE SAME STREET LIGHT AS PER THE SPECIFICATIONS."[11]

At the bid opening, defendant Hirneisen Electric, Inc. submitted the low bid with a total price of $526,000.00. Plaintiff was the second lowest bidder with a price of $718,000.00.[12]

Plaintiff's bid was based in substantial part on the cost of the Leotek Fixture lighting package materials. Independence Lighting, the sole local distributor of the Leotek Fixture, priced the lighting package materials to plaintiff at $658,880.00.  Hence, the price quoted for lighting package materials provided to plaintiff by Independence Lighting exceeded Hirneisen's entire bid.[13]

On April 20, 2011 plaintiff submitted a formal notice of bid protest to the City.  Plaintiff contended that a Pennsylvania public entity could not specify a single source

---

[10]    Verified Complaint, ¶¶ 11 and 12.

[11]    Verified Complaint, ¶¶ 13 and 14.

[12]    Verified Complaint, ¶¶ 15 and 16; Exhibit A.

[13]    Verified Complaint, ¶ 17.

provider for a given product unless it had a legitimate reason for doing so.[14]

Further, plaintiff contended that the City's decision not to allow an alternate or equal lighting fixture provided defendant Hirneisen Electric with an unfair competitive advantage and *de facto* awarded defendant Independence Lighting the decision of which contractor would be awarded the Project because Independence Lighting controlled the price it quoted to each bidder and did not provide each contractor with the same price.[15]

On May 3, 2011 the City responded to plaintiff's bid protest. The City stated that it had found merit in plaintiff's protest and would conduct a re-bidding on the Project. Accordingly, the City issued re-bid documents and scheduled the second bid opening for June 16, 2011.[16]

The re-bid documents permitted bidders to utilize the Leotek Fixture or a Visionare-ELE-1 lighting fixture ("Visionare Fixture"). However, both the Leotek Fixture and Visionare

---

[14]     Verified Complaint, ¶ 19.  Specifically, plaintiff's notice of protest, which is attached to the Verified Complaint as Exhibit "B" stated:

> "a Pennsylvania public entity is barred from specifying a single source provider of a given product, unless there is stated a specific, identifiable, and legitimate reason for doing so, i.e. they are the ONLY manufacturers of a product which fills the requirement in question.  Premier Comp Solutions, LLC v. Department of General Services, 949 A.2d 381 (Pa.Cmwlth. 2008) citing 62 Pa.C.S. § 515." (Emphasis in original.)

[15]     Verified Complaint, ¶ 20.

[16]     Verified Complaint, ¶¶ 21-22; Exhibit C.

Fixture were only available from a single distributor, Independence Lighting.[17]

Plaintiff submitted three alternate lighting fixtures[18] that were equal to the Leotek Fixture and Visionare Fixture. Each of the alternate lighting fixtures proposed by plaintiff were more energy efficient than the Leotek Fixture and had more lumens[19] than the Visionare Fixture.  However, the City rejected plaintiff's proposed alternates without explanation.[20]

On June 14, 2011 plaintiff sent the City a letter explaining that the Leotek Fixture and Visionare Fixture were only available from Independent Lighting and that therefore the re-bid was defective for the same reasons as the original bid. However, the City did not respond to plaintiff's June 14, 2011 letter.[21]

On June 16, 2011 the City opened the re-bid for the Project.  This time, plaintiff was the lowest bidder with a price of $575,000.00 and Hirneisen Electric was the second lowest bidder with a price of $595,000.00.[22]

---

[17]    Verified Complaint, ¶¶ 23 and 27.

[18]    The alternate lighting fixtures proposed by plaintiff were Beta STR-LWY-2M-HT-525 MA; Phillips Lumileds Rebel 571MA; and LSI Crossover.

[19]    A lumen is a unit of illumination.  See Meriam-Webster Dictionary (2012).

[20]    Verified Complaint, ¶¶ 24-26.

[21]    Verified Complaint, ¶¶ 28-29; Exhibit D.

[22]    Verified Complaint, ¶ 30.

Although plaintiff was the lowest bidder, the City did not award the Project to plaintiff.  Plaintiff made numerous phone calls to the City between June 16, 2011 and October 31, 2011 to inquire about the status of the Project.  The City informed plaintiff that it was waiting for approval from the Pennsylvania Department of Transportation and that the award of the contract was in the hands of the City Solicitor.[23]

However, on November 1, 2011 plaintiff learned that Hirneisen Electric had commenced work on the project.  Through a review of publically available meeting minutes of Reading City Council, plaintiff discovered that Reading had awarded Hirneisen Electric the Project on June 13, 2011--three days before the City opened the re-bid for the Project.[24]

On November 3, 2011 plaintiff sent a letter requesting an explanation for why the City awarded Hirneisen Electric the Project instead of plaintiff.  Additionally, plaintiff called the City Solicitor and purchasing coordinator in an attempt to obtain an explanation.[25]

---

[23]     Verified Complaint, ¶¶ 31-32.

[24]     Verified Complaint, ¶¶ 33-34; Exhibit "F".  Exhibit "F" is the meeting minutes for a Reading City Council meeting held on June 27, 2011, which state that Council Vice President Waltman called attention to the minutes for June 13, 2011 and noted the need for the following additions: "Add an Award of Contract to the Consent Agenda Heading awarding the Street Lighting Contract to Hirneisen."

[25]     Verified Complaint, ¶¶ 38-39; Exhibit G.

The City failed to respond, and plaintiff again sent a letter on November 9, 2011 requesting an explanation from the City.  The City again did not respond, and on November 18, 2011 plaintiff filed the within Verified Complaint.[26]

<u>CONTENTIONS OF THE PARTIES</u>

<u>Contentions of the City of Reading</u>

The City contends that each of plaintiff's claims fails to state a claim upon which relief may be granted.

Concerning Count I, the City contends that plaintiff's claim for injunctive relief fails because plaintiff did not plead irreparable harm.

With respect to Count II, the City contends that plaintiff's claim under the Sherman Act fails because plaintiff did not allege the market within which the anti-competitive behavior allegedly occurred, and because plaintiff did not allege sufficient facts to show bid rigging.  Additionally, the City contends that a municipality's use of a sole source provider does not violate the Sherman Act.[27]

Concerning Count III, the City contends that plaintiff failed to allege the particularized facts required by Rule 9(b)

---

[26]     Verified Complaint, ¶¶ 40-41.

[27]     The City also contends that plaintiff has not established that it has standing to bring an antitrust action because plaintiff cannot assert an injury-in-fact as a disappointed bidder unless it alleges that it is a tax payer.  Although the City appears to offer this argument as a basis for dismissal for lack of subject matter jurisdiction, I will consider it as a basis for dismissal pursuant to Rule 12(b)(6).  <u>See</u> <u>Seltzer</u>, 564 F.Supp.2d at 419.

of the Federal Rules of Civil Procedure, to show the existence of fraud.

Concerning Count IV, the City contends that plaintiff has failed to state a procedural due process claim because plaintiff did not have a protected property right in obtaining the contract for the Project.

Finally, concerning Count V, the City contends that plaintiff's claim for civil conspiracy fails because plaintiff does not allege that two or more people conspired to commit an unlawful act or performed overt acts in furtherance of a conspiracy.  Further, the City contends that plaintiff's civil conspiracy claim is not plausible because the parties have no motive to enter such a conspiracy.[28]

### Contentions of Plaintiff

Plaintiff disputes each of the City's contentions. However, concerning Count I, plaintiff acknowledges that its claim for injunctive relief, which sought to enjoin defendants from executing the Project, is moot because the work on the Project has been completed by Hirneisen Electric.[29]

---

[28]   The City also contends that all of plaintiff's causes of action are barred by the doctrine of laches.  However, the City does not provide any authority or otherwise brief this contention, and therefore I do not consider it.

[29]   Plaintiff disputes the City's contention that the allegations in the Verified Complaint fail to state a claim for injunctive relief.  Rather, plaintiff accepts that its claim for injunctive relief has become moot.

Accordingly, I dismiss Count I of plaintiff's complaint as unopposed.[30]

Concerning plaintiff's claim under the Sherman Act in Count II, plaintiff contends that it did not bring its claim as a "disappointed bidder", but even if plaintiff were considered a disappointed bidder, it has standing to bring the claim because it is a taxpayer within Berks County, Pennsylvania.

Moreover, plaintiff contends that pleading the relevant market was not necessary to establish an antitrust violation because plaintiff alleged price fixing and therefore established a *per se* violation under the Sherman Act.

With respect to Count III, plaintiff contends that it has pled fraud with sufficient particularity.  Specifically, plaintiff asserts that its allegations that the City stated it was waiting on approval from the Pennsylvania Department of Transportation to award the contract, when actually, the Project had already been awarded to Hirneisen Electric is sufficient to state a fraud claim.

Concerning Count IV, plaintiff concedes that it does not have a property interest in the contract awarded to Hirneisen Electric.  However, plaintiff contends that it has stated a viable procedural due process claim because it had an interest in

---

[30]    Although defendants Hirneisen Electric and Independence Lighting did not file a motion to dismiss, based on plaintiff's concession that its claim for injunctive relief is moot, Count I is dismissed with respect to all defendants.

receiving notice that the City awarded the contract to Hirneisen
Electric.  Plaintiff contends that, as a taxpayer in Berks
County, Pennsylvania, it had a right to protest the contract
being awarded to Hirneisen Electric.

Finally, with respect to Count V, plaintiff contends it
has stated a viable claim for civil conspiracy because it has
alleged that defendants entered into an illegal bid-rigging and
price-fixing agreement.  Moreover, plaintiff contends that motive
is not an element of a civil conspiracy claim under Pennsylvania
law; and that, regardless, defendants shared a common purpose for
their price fixing agreement.

<u>DISCUSSION</u>

Because I have dismissed Count I of plaintiff's
Complaint as unopposed, I only address Counts II through V.

<u>Count II</u>

Count II of the complaint asserts a claim for violation
of Section 1 of the Sherman Act, 15 U.S.C. § 1.

The Sherman Act provides that "any person who shall be
injured in his business or property by reason of anything
forbidden in the antitrust laws may sue therefore in any district
court of the United States in the district in which the defendant
resides".  15 U.S.C. § 15.

A claim under the Sherman Act may only be brought by a
plaintiff with standing to sue.  In determining whether a

particular plaintiff has standing to sue under the antitrust laws, the United States Court of Appeals for the Third Circuit weighs the following factors: (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent of the defendant to cause that harm; (2) whether the plaintiff's alleged injury is the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.  2660 Woodley Road Joint Venture v. ITT Sheraton Corporation, 369 F.3d 732, 740-41 (3d Cir. 2004).

The City contends that plaintiff has not alleged it suffered an antitrust injury because it does not have standing to enforce compliance with the requirement that public contracts be awarded to the lowest responsible bidder.  Specifically, plaintiff has not alleged that it was a taxpayer in the City of Reading, and pursuant to Pennsylvania public bidding laws, only tax payers have standing to challenge the award of a public contract.[31]

---

[31]   Under Pennsylvania public bidding laws, a municipality has an obligation to award its public contracts to the lowest responsible bidder. However, a disappointed bidder does not have standing to challenge the award of a public contract unless it is also a taxpayer within the municipality. J.P. Mascaro & Sons, Inc. v. Township of Bristol, 95 Pa.Commw. 376, 379, 380 n.3, 505 A.2d 1071, 1073, 1073, n.3 (1984)

However, Count II of the Verified Complaint does not assert a claim for violations of Pennsylvania's public bidding laws.  Rather it asserts a claim that defendants violated Section 1 of the Sherman Act.[32]  Therefore, the cases cited by defendant which analyze Pennsylvania public bidding procedures are not applicable to this issue.

Moreover, the City does not otherwise offer any authority for its contention that plaintiff does not have standing to bring a claim under federal antitrust laws.[33]  Accordingly, as briefed, defendant's contention that plaintiff lacks antitrust standing does not warrant dismissal.

Although a lack of standing does not provide a basis for dismissal of plaintiff's complaint, I still must determine whether plaintiff has otherwise stated a viable claim under the Sherman Act.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

---

[32]     Paragraph 67 of plaintiff's Verified Complaint alleges that defendants' "conspiracy was an illegal violation of Pennsylvania's public bidding laws."  However, plaintiff's claim is clearly premised on a violation of the Sherman Act.

[33]     The City cites Broadcom Corporation v. Quallcomm Incorporated, 501 F.3d 297, 320 (3d Cir. 2007), which outlines the foregoing five-factor test employed by the United States Court of Appeals for the Third Circuit to consider the existence of antitrust standing (City's Brief, page 9, n.5).

However, the City does not offer any analysis to support its contention that plaintiff lacks antitrust standing.  Accordingly, I do not consider this contention as a basis for dismissal.  See E.D.Pa.R.Civ.P. 7.1.

States, or with foreign nations, is hereby declared to be illegal."   15 U.S.C. § 1.

From the inception of the Sherman Act, courts have interpreted Section 1 to prohibit "only unreasonable restraints of trade."   Business Electonics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 723, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808, 816 (1988).   In determining whether a particular restraint of trade is unreasonable, courts generally apply a "case-by-case" application of the "rule of reason".   Under a rule of reason analysis, a factfinder weighs all of the circumstances to consider whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.   Id.

However, certain categories of agreements are considered "per se" unreasonable.   A restraint on trade will be considered per se illegal if it is "manifestly anticompetitive" and "would always or almost always tend to restrict competition and decrease output".   Id.

The "most important per se categories are naked horizontal price-fixing, market allocation, and output restrictions."   The Stop & Shop Supermarket Company v. Blue Cross & Blue Shield of Rhode Island, 373 F.3d 57, 61 (1st Cir. 2004).   "Bid rigging" among competing bidders to control the bid level likewise constitutes a per se illegal restraint of trade.   MHB

<u>Distributors, Inc. v. Park Hannifin Corporation</u>, 800 F.Supp 1265, 1268 (E.D.Pa. 1992) (Pollak, J.).

In contrast, vertical restraints on trade are governed by the rule of reason.  <u>Leegin Creative Leather Products, Inc. v. PSKS, Inc.</u> 551 U.S. 877, 882, 127 S.Ct. 2705, 2710, 168 L.Ed.2d 623, 631 (2007).

Here, the alleged conspiracy between the City, Hirneisen Electric, and Independence Lighting plainly involves a vertical restraint.  None of the parties are direct competitors of each other.  Indeed, plaintiff concedes that "this case involves a vertical restraint because the conspiracy is between a buyer (the City), and two sellers (Hirneisen and Independence)."[34]

Nevertheless, plaintiff contends that the alleged conspiracy between defendants constitutes a per se illegal restraint of trade because the "vertical restraint of trade involved price fixing".[35]

In arguing for an application of the per se rule, plaintiff attempts to distinguish this case from <u>Expert Masonry, Inc. v. Boone County, Kentucky</u>, 440 F.3d 336, (6th Cir. 2006).

In <u>Expert Masonry, Inc.</u>, a plaintiff alleged that a municipality and a contractor conspired to award a public

---

[34]     Plaintiff's Brief, page 14, note 4.

[35]     <u>Id.</u> at page 14.

contract to the contractor, despite plaintiff submitting a better bid for the contract.  The United States Court of Appeals for the Sixth Circuit held that because the alleged restraint on trade was vertical (the municipality and the contractor were not direct competitors), the agreement would be analyzed under the rule of reason.  Id. at 345.

However, the Sixth Circuit also noted that the vertical agreement between the city and the contractor did not involve "vertical price fixing of minimum prices".  The court stated that those agreements remained "illegal per se."  Id.  (internal quotations omitted).

Plaintiff's attempt to distinguish this case from Expert Masonry, Inc. suffers from two flaws.  First, like the plaintiff in Expert Masonry, Inc., here, plaintiff does not allege that the conspiracy between defendants involved minimum price maintenance.[36]

Second, and more importantly, subsequent to the Expert Masonry, Inc. decision, the United States Supreme Court has squarely held that "vertical price restraints are to be judged by

---

[36]     Although plaintiff asserts that defendants conspired to "fix the price of Hirneisen's bid" (Plaintiff's Brief, page 14), such an agreement does not constitute "price fixing" under the Sherman Act.  Indeed, "price fixing in its literal sense is not condemned per se: virtually every sale is an agreement on price".  Expert Masonry, Inc. 440 F.3d at 344.

Rather, an example of "vertical fixing of minimum prices" is when a manufacturer of a product requires a distributor or retailer to sell the product at a minimum price.  Id.; see also The Stop & Shop Supermarket Company, 373 F.3d at 61.

the rule of reason." <u>Leegin Creative Leather Products, Inc.</u> 551 U.S. at 882, 127 S.Ct. at 2710, 168 L.Ed.2d at 631 (2007).

Therefore, even if plaintiff had alleged that the conspiracy between defendants involved vertical price fixing, the restraint of trade would still be analyzed under the rule of reason.

Plaintiff does not appear to contend that its claim survives under a rule of reason analysis.  Indeed, plaintiff tacitly admitted that its complaint does not adequately plead a violation of the Sherman Act, when analyzing the restraint of trade under the rule of reason.[37]

Therefore, because a rule of reason analysis is appropriate for analyzing the alleged restraint on trade, and

---

[37]    The City contends that plaintiff did not allege all the elements of an antitrust claim analyzed under the rule of reason because plaintiff failed to plead the relevant market.  (Defendant's brief, page 14).

Conduct that is not per se illegal may nevertheless violate the Sherman Act under the rule of reason.  Under a rule of reason analysis, a plaintiff must plead (1) concerted action by the defendants; (2) which produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that plaintiff was injured as a proximate result of the concerted action.  <u>Patel v. Smith</u>, 2011 U.S.Dist. LEXIS 74645 at *8 (E.D.Pa. July 12, 2011) (Pollak, J.) <u>citing Gordon v. Lewistown Hospital</u>, 423 F.3d 184, 207 (3d Cir. 2005).

Concerning second element, the plaintiff "has the burden of defining the relevant market" and must "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand".  <u>Id.</u> quoting <u>Queen City Pizza v. Domino's Pizza</u>, 124 F.3d 430, 436 (3d Cir. 1997).

Plaintiff responded to the City's contention by stating that "[b]ecause [plaintiff] plead a per se violation of the Act, the anticompetitive effects within the relevant geographic and product market are implied and [plaintiff] was not required to plead such facts in the Complaint."  (Plaintiff's Brief, pages 14 and 15).

because plaintiff does not contend its claim survives under a
rule of reason analysis, I grant defendant's motion to dismiss
Count II of plaintiff's complaint.  However, I dismiss Count II
without prejudice for plaintiff to amend Count II in order to
state a viable claim under the Sherman Act as analyzed under the
rule of reason.[38]

---

[38]      Here, apparently believing defendants' conduct amounted to per se
violations of the Sherman Act, plaintiff did not plead the relevant product or
geographic markets with sufficient specificity.  However, because the alleged
agreement between defendants involved a vertical restraint of trade, a rule of
reason analysis requires plaintiff to plead both the relevant product and
geographic markets.

         Additionally, as alleged in the Verified Complaint, plaintiff has
not pled that the concerted activity between defendants produced anti-
competitive effects.

         The "choice of the consumer can be expressed in specifications as
well as the final bid." Doron Precision Systems, Inc. v. FAAC, Inc.,
423 F.Supp.2d 173, 184 (S.D.N.Y. 2006).  Accordingly, a municipality
soliciting bids on a public contract may "tailor its bid specifications to
match the blueprint of a particular product".  Id.

         Additionally, a violation of state competitive bidding laws does
not, by itself, establish a violation of the Sherman Act.  This is because
"competitive bidding laws and antitrust laws are motiveated by very different
policies".  Competitive bidding laws, which are designed to limit corruption,
limit the choices of a public purchaser (often requiring the public purchaser
to make choices based on costs rather than other preferences).  In contrast,
antitrust laws protect the purchaser's "freedom to make a choice in the first
place." Id.

         However, if a plaintiff alleges "bribery, fraud, or improper
selling methods that robbed the ultimate purchaser of the opportunity to
choose its product", a public contractor may run afoul of the Sherman Act.
Id.

         Here, plaintiff has not alleged that either Hirneisen Electric or
Independent Lighting bribed City officials or otherwise used improper selling
methods.  Moreover, while plaintiff alleges fraudulent conduct on the part of
the City (Count III), this claim is not asserted against the other defendants.

         Nor does it appear that the City, as the "ultimate purchaser" was
robbed of the "opportunity to choose its product".  Accordingly, as alleged,
the conduct of the City does not violate the Sherman Act because plaintiff has
failed to allege that the conduct of defendants produced anti-competitive
effects.

(Footnote 38 continued):

<u>Count III</u>

Count III asserts a state law claim for fraud under Pennsylvania law.

In Pennsylvania, a claim for fraud requires a plaintiff to allege the following elements with particularity: (1) a misrepresentation; (2) a fraudulent utterence of it; (3) the maker's intent that the recipient would be induced to thereby act; (4) the recipient's justifiable reliance on the misrepresentation; and (5) damage to the recipient proximately caused.  <u>Sevin v. Kelshaw</u>, 417 Pa.Super. 1, 9, 611 A.2d 1232, 1236 (Pa.Super. 1992).

The City contends that plaintiff's fraud claim fails because it is not alleged with sufficient particularity. Moreover, the City contends that plaintiff's allegations are conclusory as demonstrated by the City's attached Exhibits to the within motion as well as all of the defendants' responses to plaintiff's motion for a preliminary injunction.

However, because this is a motion to dismiss, I decline to consider the attached Exhibits to the City's motion.[39]

---

(<u>Continuation of footnote 38</u>):

However, because I cannot conclude that amendment to plaintiff's antitrust claim would be futile, I dismiss Count II without prejudice for plaintiff to file an amended complaint in accordance with this Opinion.

[39]    In ruling on a motion to dismiss, the court ordinarily relies only on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  <u>Sands</u>, 502 F.3d at 268.

(<u>Footnote 39 continued</u>):

Additionally, I conclude that plaintiff's allegations are sufficient to state a claim for fraud.

The complaint alleges numerous misrepresentations made by the City.  Specifically, plaintiff alleges that it made numerous phone calls to the City between June 16, 2011 and October 31, 2011 to inquire about the status of its bid.  Each time, the City informed plaintiff that it was still waiting for approval from the Pennsylvania Department of Transportation.[40]

However, the City's representation to plaintiff was false because Hirneisen had already been awarded the contract for the Project.  Plaintiff further alleges that the City had

---

(Continuation of footnote 39):

However, the court may also consider any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss, if plaintiff's claims are based on the document.  Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, the City attaches seven documents (Exhibits "A" through "G" to its motion to dismiss, four of which were not attached to plaintiff's complaint.  Those four documents are two emails between plaintiff and the City's Purchasing Coordinatory, Tammi Reinhart (Exhibits E and F) and two documents that show the City's approval to award the Project contract to Hirneisen Electric (Exhibits D and G).

Although these documents relate to plaintiff's claims, plaintiff's Complaint does not specifically refer to the documents and plaintiff's allegations do not appear to be based on any of the four documents defendant attaches to its motion which plaintiff did not already attach to its complaint.

Therefore, I do not consider Exhibits "D", "E", "F" and "G" in conjunction with the City's motion to dismiss.

[40]   See Verified Complaint, ¶¶ 30-32 and 72-73.

knowledge that the contract was awarded to Hirneisen Electric
when it made the false representation plaintiff.[41]

Additionally, plaintiff alleges that it relied upon the
City's misrepresentation because plaintiff withheld filing a
second bid protest and a motion for a preliminary injunction to
prevent the Project from being awarded to Hirneisen Electric.
Accordingly, plaintiff contends that it suffered damages
resulting from the City's misrepresentation because it was not
awarded the contract for the Project.[42]

Therefore, accepting plaintiff's allegations as true,
as I am required to do under the applicable standard of review, I
conclude that plaintiff has stated a viable claim for fraud.
Accordingly, defendant's motion to dismiss is denied to the
extent it seeks dismissal of Count III.

<u>Count IV</u>

In Count IV, plaintiff brings a claim pursuant to
42 U.S.C. § 1983, which asserts that the City violated
plaintiff's procedural due process rights under the United States
Constitution.

To establish a procedural due process claim under
Section 1983, a plaintiff must prove (1) a deprivation of an
individual interest encompassed by the Fourteenth Amendment's

---

[41]    <u>See</u> Verified Complaint, ¶¶ 33-35 and 76.

[42]    <u>See</u> Verified Complaint, ¶ 77-79.

protection of life, liberty or property, and (2) that the procedures available did not provide due process of law. Hill v. Borough of Kutztown, 455 F.3d 225, 233-234 (3d Cir. 2006).

However, procedural due process does not protect every benefit. Instead, a person must have a legitimate claim of entitlement to the benefit. Entitlements are not established by the Constitution. Rather, they are created and defined by existing rules or understandings that stem from an independent source, such as state law. Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 2803, 162 L.Ed.2d 658, 668 (2005)(internal citation omitted).

Here, plaintiff contends that it was deprived of a property interest protected by the Fourteenth Amendment when the City failed to notify plaintiff that it had awarded the Project to Hirneisen Electric. Such notification would have enabled plaintiff, as a taxpayer[43], to protest the award.[44]

Accordingly, plaintiff argues that, by fraudulently concealing its award of the Project contract to Hirneisen

---

[43]     Plaintiff's allegation that it is a taxpayer within the Berks County, Pennsylvania does not appear in its Verified Complaint. Rather, plaintiff asserts that it is a taxpayer in its brief (Plaintiff's Brief, page 17).

[44]     Plaintiff's Brief, page 17; Verified Complaint, ¶ 82. Paragraph 82 of the Verified Complaint also alleges that plaintiff's procedural due process rights were violated when City failed to award the contract for the Project to plaintiff. However, in its brief, plaintiff "conceded that it does not have a property interest in the contract awarded to Hirneisen." (Plaintiff's Brief, page 17).

Electric, the City deprived plaintiff of its right to challenge the award of the contract.

In conceding that it does not have a property interest in the contract itself, plaintiff appears to recognize that Pennsylvania's competitive bidding statutes "are for the benefit of the public only and do not give a low bidder standing to challenge a municipality's failure to award a contract in accordance with the statute. Independent Enterprises Inc. v. Lozecki, 103 F.3d 1165, 1178 (3d Cir. 1997).

However, Pennsylvania bidding statutes do provide taxpayers with a cause of action to challenge a municipality's unlawful award of a contract. Five Star Parking v. Philadelphia Parking Authority, 1987 U.S.Dist. LEXIS 5431 at *7 (E.D.Pa. June 19, 1987) (Pollak, J.).

Although taxpayers have standing to challenge a public contract, this does not create a federal property interest. This is because "the violation of a law is not, ipso facto, a deprivation of due process to all persons affected.... The due process clause is a narrow, personalized guarantee which only protects against the deprivation of one's own *liberty* and *property*". ARA Services, Inc. v. The School District of Philadelphia, 590 F.Supp. 622, 627 (E.D.Pa. June 22, 1984) (Broderick, J.) (emphasis in original) (quoting Three Rivers

Cablevision v. City of Pittsburgh, 502 F.Supp. 1118, 1128 (W.D.Pa. 1980)).

Therefore, a plaintiff's "status as a taxpayer is insufficient 'to vest in him any constitutionally-protected property interest under the due process clause.'"  ARA Services, Inc. 590 F.Supp. at 627 (quoting Three Rivers Cablevision, 502 F.Supp. at 1132).

Accordingly, the City's failure to provide notice to plaintiff after awarding the Project to Hirneisen Electric did not deprive plaintiff of a property interest.  Because plaintiff has failed to allege deprivation of a protected property interest, I grant defendant's motion to the extent that it seeks dismissal of Count IV.  Accordingly, I dismiss Count IV with prejudice.[45]

<u>Count V</u>

In Count V, plaintiff brings a claim for civil conspiracy under Pennsylvania law.

In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of

---

[45]    I dismiss Count IV with prejudice because even if plaintiff were a taxpayer within Berks County, Pennsylvania, plaintiff's allegations are still insufficient to establish that defendant deprived plaintiff of a property interest protected by the Fourteenth Amendment.

the common purpose; and (3) actual legal damage.  General Refractories Company v. Fireman's Fund Insurance Company, 337 F.3d 297, 313 (3d Cir. 2003); see Strickland v. University of Scranton, 700 A.2d 979, 987-988 (Pa.Super. 1997).

Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy."  Nix v. Temple University, 408 Pa.Super 369, 379, 596 A.2d 1132, 1137 (Pa.Super.Ct. 1991).

Here, plaintiff alleges that defendants "engaged in a price fixing conspiracy in violation of the Sherman Act and Pennsylvania state law in order for the City to provide business to Independence Lighting, award the project to Hirneisen Electric, and deprive [plaintiff] of being awarded the Project even though it was the low bidder."[46]

However, as explained above, plaintiff has not stated a claim under the Sherman Act because it has not sufficiently alleged that defendants' conduct constituted a per se illegal restraint on trade.  Nor do plaintiff's allegations state a claim that defendants' conduct violated the Sherman Act as analyzed under the rule of reason.

Additionally, although plaintiff states a viable fraud claim, it's fraud claim is brought only against the City. Plaintiff does not allege that the City and the other defendants

---

[46]    Verified Complaint, ¶ 88.

conspired to engage in the fraudulent conduct described in the complaint.  Therefore, plaintiff's fraud claim cannot serve as the basis for a civil conspiracy claim.

Therefore, because plaintiff's civil conspiracy claim is premised on its claim under the Sherman Act, and plaintiff has failed to state a claim under the Sherman Act, I grant defendant's motion to dismiss Count V of plaintiff's complaint.

However, because I have given plaintiff leave to amend Count II, I likewise dismiss Count V without prejudice for plaintiff to file an amended complaint in accordance with this Opinion.[47]

<u>CONCLUSION</u>

For all of the foregoing reasons, the City's motion to dismiss is granted in part and denied in part.

Specifically, Count I of plaintiff's complaint is dismissed with prejudice as unopposed.  Additionally the City's motion is granted to the extent it seeks dismissal of plaintiff's procedural due process claim (Count IV) with prejudice.

---

[47]   Because I dismiss Count V based on plaintiff's failure to allege an underlying violation of the law, I do not address the City's arguments that plaintiff's civil conspiracy claim fails because plaintiff failed to allege how the conspiracy was reached or any over acts in furtherance of it.

While nothing in this Opinion should be construed as ruling on the merits of the City's argument, in granting plaintiff leave to amend its civil conspiracy claim, I also give plaintiff leave to amend in order to respond to the arguments raised in the City's motion to dismiss Count V.

However, because I grant plaintiff broad leave to amend at this juncture, it is the sense of this Opinion that, in the event the City is successful in seeking dismissal of plaintiff's amended complaint, plaintiff may not be granted leave to re-plead again.

The City's motion to dismiss is also granted to the extent it seeks dismissal of Counts II and V.  However, I dismiss Counts II and V without prejudice for plaintiff to file an amended complaint in accordance with this Opinion.[48]

Finally, the City's motion is denied to the extent it seeks dismissal of Count III.

I give plaintiff until October 29, 2012 to file an amended complaint in accordance with this Opinion.  In the event plaintiff does not file an amended complaint on or before October 29, 2012, I give the City until November 19, 2012 to file an answer to Count III of the Verified Complaint.

---

[48]     In granting defendant's motion to dismiss Count II (without prejudice) and Count IV (with prejudice), plaintiff's remaining claims against the City are based on state law and do not pose a federal question.

As explained in footnote 7, above, I have considered the City's motion to dismiss for lack of jurisdiction as a request that I refrain from exercising supplemental jurisdiction over plaintiff's state-law law claims.

However, at this juncture declining to exercise jurisdiction would be inappropriate.

First, because I dismissed Count II without prejudice, plaintiff may state a viable claim under federal law upon filing an amended complaint. Second, because defendants Hirneisen Electric and Independence Lighting have answered plaintiff's complaint, at this point, a federal question exists, even if plaintiff elects not to pursue its claim under the Sherman Act against the City.

Therefore, I have not dismissed all claims over which this court has original jurisdiction, and no other "exceptional circumstances" exist which would warrant declining jurisdiction over plaintiff's state claims against the City.  See 28 U.S.C. § 1367.